# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**Plaintiff**

BENSON J. FISCHER
12400 Park Potomac Avenue, Apt. 352
Potomac, Maryland 20854
*Plaintiff Pro Se*,

v.

Case No.: 015-CV26-004278

**Defendants**

FRANK REINO, ESQ.
c/o Fisher Zucker LLC
21 South 21st Street
Philadelphia, PA 19103

RECEIVED
JUL 27 2026
Clerk of the Circuit Court
Montgomery County, Md.

and

FISHER ZUCKER LLC
Serve on: Managing Member / Registered Agent
21 South 21st Street
Philadelphia, PA 19103

## COMPLAINT AND JURY DEMAND

Plaintiff Benson J. Fischer ("Plaintiff"), proceeding Pro Se, files this Complaint against Defendants Frank Reino, Esq. and Fisher Zucker LLC (collectively, "Defendants"), alleging as follows:

## INTRODUCTION

1. This is an action for severe financial, business, and reputational injury caused by an out-of-state corporate attorney and his law firm who intentionally stepped outside the bounds of authorized legal practice to wage an extrajudicial campaign of defamation, trade libel, and economic sabotage against a Maryland resident.

EXHIBIT
tabbies
1

2. Seeking to destroy a highly successful commercial consulting venture, Defendants fabricated and disseminated false accusations of criminal behavior (the Unauthorized Practice of Law) and professional ethics violations (illegal fee-splitting) to independent third parties in Maryland and across the country.

3. Because these statements were made outside of any judicial proceeding to prospective client third parties for an anti-competitive, tortious purpose, Defendants enjoy no professional or litigation privilege and are liable jointly and severally for the resulting destruction of Plaintiff's prospective business pipeline.

## PARTIES

4. **Plaintiff Benson J. Fischer** is an individual, a lifelong entrepreneur, a business consultant, and a resident of Potomac, Montgomery County, Maryland.

5. **Defendant Frank Reino, Esq.** is an individual and an attorney licensed to practice law in the Commonwealth of Pennsylvania, maintaining his primary business address at 21 South 21st Street, Philadelphia, PA 19103. At all times relevant to this action, Defendant Reino acted as a partner, member, employee, and authorized agent of Defendant Fisher Zucker LLC.

6. **Defendant Fisher Zucker LLC** ("Fisher Zucker") is a Pennsylvania limited liability company engaged in the practice of law, maintaining its principal office at 21 South 21st Street, Philadelphia, PA 19103. At all times relevant to this action, Defendant Fisher Zucker acted by and through it.s partners, members, employees, and agents, including Defendant Reino, and served as corporate legal counsel for Nautical Bowls Franchising, LLC.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendants pursuant to Maryland's Long-Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) and (4), because Defendants committed tortious acts outside of Maryland that they knew would cause, and which did in fact cause, severe tortious injury and catastrophic economic destruction to a resident inside Montgomery County, Maryland.
8. Defendants specifically targeted their tortious and defamatory communications at a business operation run by a Maryland resident out of Montgomery County, satisfying the "Effects Test" established under *Calder v. Jones*, 465 U.S. 783 (1984).
9. Venue is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201 because the economic injury, tortious interference, and reputational harm occurred and crystallized within Montgomery County, Maryland.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Established Consulting Business Model

10. Plaintiff Benson J. Fischer is a veteran entrepreneur with a 45-year career developing, operating, and consulting for over 60 businesses, primarily across the food and beverage, real estate, franchising, and marketing sectors.
11. In early 2024, Plaintiff began investigating widespread operational failures, administrative breakdowns, and corporate misrepresentations impacting franchise operations within the Nautical Bowls Franchising, LLC network.
12. Utilizing his extensive restaurant, operational, and franchise management background, Plaintiff established a lawful, highly effective commercial consulting venture alongside Maryland attorney Richard E. Schimel, Esq. Under this operational framework, Plaintiff

acted strictly as an independent operational and business consultant—helping franchisees analyze financial diagnostics, organize corporate documentation, evaluate operational losses, and navigate dispute resolution options.

13. At no point did Plaintiff provide legal advice, draft court pleadings, or hold himself out to any party as a licensed attorney. Furthermore, Plaintiff's consulting fees were structured completely independently, with zero fee-sharing, fee-splitting, or illicit financial partnerships between Plaintiff and attorney Richard E. Schimel, Esq.

14. Plaintiff's historical Pro Se actions have been strictly limited to his own personal and business filings.

**B. Proven Track Record & The Summer/Fall 2025 Mediations**

15. Plaintiff's business venture achieved immediate, documented commercial success. Between June and August 2025, Plaintiff and Mr. Schimel organized an initial group of over fifteen (15) Nautical Bowls franchisees seeking formal mediation and redress under their franchise agreements **(Exhibit 1)**.

16. In August 2025, franchisees executed administrative Powers of Attorney designating Plaintiff as their attorney-in-fact strictly for business and operational representation during mediation sessions scheduled with the American Arbitration Association (AAA) in Minneapolis, Minnesota **(Exhibit 2)**.

17. Plaintiff's designation as an attorney-in-fact was purely administrative and business-oriented, enabling Plaintiff to assist franchisees as a commercial operational consultant alongside licensed legal counsel. At no time did Plaintiff perform legal services under those instruments **(Exhibit 2)**.

18. Despite intense pushback and procedural friction from Defendants regarding Plaintiff's active participation (Exhibits 1, 3, 5), Plaintiff and Mr. Schimel successfully attended, organized, and negotiated binding legal settlements for this initial group of franchisees during scheduled sessions in September 2025 **(Exhibits 4 & 6)**.

## C. Defendants' Extrajudicial Deception, Defamation, and Interference

19. Following the proven track record and success of the initial group, Plaintiff initiated outreach to form a second group of disgruntled franchisees to seek similar legal and operational redress. Plaintiff had a concrete, economically viable expectation of substantial consulting fees and commercial advantages from this prospective second client pipeline.

20. Realizing that the successful organization of a second franchisee group would expose their corporate client to significant legal and financial liability, Defendants chose to launch an extrajudicial strike designed to textually coerce prospective clients and destroy Plaintiff's consulting business.

21. Rather than utilizing formal judicial channels or court-sanctioned proceedings, Defendants transmitted defamatory electronic communications directly to independent third-party franchisees who were actively in discussions to join Plaintiff's second consulting group. These recipients were prospective clients and non-parties to any active court litigation.

22. Specifically, on Sunday, February 1, 2026, Defendant Reino—acting within the scope of his agency, employment, and partnership with Defendant Fisher Zucker LLC—sent emails to prospective clients including Andrew Erickson **(Exhibit 7)**. In this

communication, Defendants manufactured severe, unverified criminal and ethical fabrications against Plaintiff, writing:

***"Mr. Erickson, my client no longer attempts to settle cases where Mr. Schimel is counsel. He is working with a man named Benson Fischer (who is not a lawyer, who has crossed the line and engaged in the unauthorized practice of law and who Mr. Schimel shares his fees with). Mr. Fischer solicits my client's franchisees on behalf of Mr. Schimel and I told them that my client would not negotiate with them and reward their behavior if they continued to solicit the franchisee network, which they have continued to do. The franchisees need to find different counsel if they want to settle their claims. Otherwise, we are prepared to litigate them."*** **(Exhibit 7)**

**D. Absolute Falsity, Malicious Intent, and Partnership Liability**

23. The statements written and published by Defendants are completely, demonstrably, and maliciously false.

24. Plaintiff has never engaged in the unauthorized practice of law. His work was strictly limited to operational diagnostics, administrative coordination, and business strategy.

25. Furthermore, there is zero fee-sharing or fee-splitting between Plaintiff and attorney Richard Schimel. Defendants possessed no evidence of such an arrangement because none exists.

26. Defendant Reino weaponized his title as an attorney—and his authority as a partner at Defendant Fisher Zucker—to impart a false veneer of truth to a defamatory smear campaign, distributing these fabrications outside of a courtroom setting to non-litigant third parties for an anti-competitive, tortious purpose.

27. At all times relevant hereto, Defendant Reino acted within the course, scope, and authority of his partnership, agency, and employment with Defendant Fisher Zucker LLC. Defendant Fisher Zucker LLC authorized, ratified, participated in, and derived commercial benefit from the tortious conduct of Defendant Reino, rendering Fisher

Zucker LLC jointly and severally liable under principles of agency, partnership law, and *respondeat superior.*

28. As a direct result of Defendants' defamatory communication, the prospective second group of franchisees fractured under duress and fear of blacklisting. Multiple prospective clients abandoned their relationship with Plaintiff, completely destroying Plaintiff's expected consulting income and inflicting permanent damage on his professional business reputation.

## COUNT I: DEFAMATION PER SE

*(Against All Defendants, Jointly and Severally)*

29. Plaintiff incorporates and re-alleges paragraphs 1 through 28 as if fully set forth herein.

30. Defendants knowingly made written, unprivileged, and false statements of fact concerning the Plaintiff to independent third parties **(Exhibit 7).**

31. Defendants' statements constitute Defamation *Per Se* under Maryland law because:

- They falsely accuse Plaintiff of criminal conduct (the Unauthorized Practice of Law is a misdemeanor under Md. Code Ann., Bus. Occ. & Prof. § 10-601 and § 10-606); and
- They directly injure Plaintiff in his trade, profession, and commercial business as an operational consultant.

32. Defendants published these statements with actual malice, ill-will, and reckless disregard for the truth, knowing that the allegations of UPL and illegal fee-splitting were entirely fabricated.

33. Defendant Fisher Zucker LLC is vicariously and directly liable for the defamatory publications made by its partner and agent, Defendant Reino, in the course of representing the firm's client.

34. Because Defendants' statements constitute Defamation *Per Se*, injury to Plaintiff's reputation is legally presumed under Maryland law. Furthermore, Plaintiff has suffered actual, quantifiable economic devastation and the total destruction of his prospective consulting pipeline.

## COUNT II: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

*(Against All Defendants, Jointly and Severally)*

35. Plaintiff incorporates and re-alleges paragraphs 1 through 34 as if fully set forth herein.

36. Plaintiff maintained valid, concrete, and economically viable prospective business relationships with a second group of prospective franchisee clients, which was reasonably certain to yield substantial consulting fees.

37. Defendants had actual knowledge of Plaintiff's prospective business relationships and consulting pipeline.

38. Defendants intentionally, maliciously, and calculatedly interfered with those prospective business relationships through wrongful and improper means—specifically through trade defamation, false accusations of criminal behavior, and economic coercion delivered outside of any judicial proceeding **(Exhibit 7)**.

39. Defendants' interference was not legitimate legal advocacy, but an extrajudicial, anti-competitive boycott designed specifically to break up Plaintiff's business network and force prospective clients to abandon Plaintiff.

40. Defendant Fisher Zucker LLC is jointly and severally liable for the intentional interference committed by its partner, Defendant Reino, who acted on behalf of the firm to unlawfully destroy Plaintiff's business pipeline.

41. As a direct and proximate result of Defendants' wrongful interference, Plaintiff's prospective business relationships were destroyed, the consulting pipeline collapsed, and Plaintiff suffered substantial, quantifiable losses of business income.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Benson J. Fischer respectfully prays for judgment against Defendants Frank Reino, Esq. and Fisher Zucker LLC, jointly and severally, as follows:

A. Compensatory damages in the amount of Two Million Dollars ($2,000,000.00);

B. Punitive damages in the amount of Four Million Dollars ($4,000,000.00);

C. Pre-judgment and post-judgment interest as allowed by law;

D. The costs of this action; and

E. Such other and further relief as this Court deems just and proper.

## PLAINTIFF'S JURY DEMAND

Plaintiff Benson J. Fischer hereby demands a trial by jury on all counts and issues triable of right by a jury in the above-captioned matter.

Dated: July 27, 2026

Respectfully submitted,

Benson J. Fischer
*Plaintiff Pro Se*
12400 Park Potomac Avenue, Apt. 352
Potomac, Maryland 20854
Phone: (301) 801-5476
Email: Ben@ZivZo.com

# EXHIBIT 1

ZivZo
Video Production & Creative Marketing

Ben Fischer <ben@zivzo.com>

# AS REQUESTED

**Richard Schimel** <rschimel@lawofficesres.com>
To: "Ben@zivzo.com" <ben@zivzo.com>

Wed, Jun 18, 2025 at 3:04 PM

**Sent:** Wednesday, June 4, 2025 6:19 PM
**To:** Richard Schimel <rschimel@lawofficesres.com>
**Subject:** RE: MEDIATION UPDATE

Richard, thank you for your email.

We will mediate with the two additional franchisees, but we ask that you file the demands for them (and that last one you mentioned joining which has not been added yet). We filed the first 15.

I am fine with the structure and would like to do the mediations sequentially like you suggested with each franchisee mediating their individual dispute.

I think it makes sense to use MN mediators and of course I do not want to use one that has any experience with my client. I suspect mediators who have will advise us of that potential conflict and you are free to object.

However, I do ask that you do not have Mr. Fischer appear at these mediations. Just like Dennis Yu has been a distraction to you, Fischer has been a distraction to us. He's been nothing but unproductive in these discussions. He's admitted his goal is to put my client out of business stating that this goal was "one step further" than your goal as the attorney. He's been aggressive, sarcastic, and threatening. My clients are legitimate concerned about his temperament and we think him being present and/or involved in any way will do nothing to foster a settlement. If Mr. Fischer is involved, I think we're wasting our time because I don't think anything productive can be achieved with him involved.

In terms of next steps, I think we should ask the AAA to resend us a list with more MN mediators so we can rank them and have the AAA pick four for us to mediate these cases with.

Thanks

Frank

# EXHIBIT 2

On Aug 8, 2025, at 6:12 PM, Richard Schimel <rschimel@lawofficesres.com> wrote:

On Wednesday, August 6, 2025, I had a lengthy Zoom conference with most of my clients. They felt very strongly on three specific issues which we will now need to address.
When I explained to them your client's position concerning participation in the mediation by Benny Fischer they were quite distressed. Many of them are relying on Mr. Fischer's expertise and guidance and expect his input during the mediation process. As I recall, your main concern about Mr. Fischer's attendance was that he would be a disruptive force based upon his prior aggressive communications with both you and Mr. Amundson. That concern can be easily addressed by ensuring that Mr. Fischer is not in the same room with either you or a Nautical Bowls representative during the mediation process. Accordingly, it is my intention to have Mr. Fischer come to Minneapolis with me to be available as a consultant for my clients.

The second issue concerns the scheduling of the mediations. In our discussions you advised that you wanted to schedule 1 mediation per day. By my calculation, my clients will be spending approximately $5000 for Mr. Fischer and I to appear for one week of mediation. During the five days that we are there, my clients want to conclude as many mediations as possible, because they do want me and Mr. Fischer to have to come back to Minneapolis a second or third time. Accordingly, I believe that it is realistic to schedule 3 mediations per day for 2.5 hours each. If we do not reach a settlement after that time period, then I will be taking the position that a reasonable effort to mediate has occurred and that we have satisfied the requirements of the franchise agreement as a precondition to litigation.

I therefore propose that we set up the following schedule:
Session 1: 9:00-11:30 a.m.
Session 2: 12:30 p.m. – 3:00 p.m.
Session 3: 3:30 p.m. – 6:00 p.m.

I will arrange for my clients to be available in accordance with this schedule. The first attachment is the order in which I propose these mediations to occur. If you are unwilling to agree to this proposal and insist on doing 1 mediation per day, then I suggest that you show some flexibility and allow the remaining mediations to be done remotely by Zoom.

The last issue concerns your insistence on personal appearance of franchisees in Minnesota for the mediations. This is a financial or logistical hardship for Several of my clients. Attached you will find 5 powers of attorney that have been signed by 5 of my franchisees designating Mr. Fisher as their attorney in fact for the purposes of this mediation session. Based on that documentation, I believe that he can appear as their agent on their behalf in lieu of my client's personal appearance. I see nothing in the franchise agreement signed by my clients that precludes that from occurring.

*Richard E. Schimel, Esq.*
**401 N. Washington Street**
**Suite 500**
**Rockville, Maryland 20850**
**(240) 395-4400 Office**
**(240) 463-7073 Cell**
**(240) 774-0235 Fax**

# EXHIBIT 3

**From:** Frank Reino <freino@fisherzucker.com>
**Sent:** Monday, August 11, 2025 1:54 PM
**To:** Richard Schimel <rschimel@lawofficesres.com>
**Cc:** Adina Thammavongsa AAA <AdinaThammavongsa@adr.org>
**Subject:** RE: Nautical Bowls Franchising, LLC - Case 01-25-0002-7213

Richard, I'm not sure why we have to keep addressing this, but I will again.
First, Mr. Fischer is a disruptive force, he has harassed my clients, he has also now frivolously sued my clients in which he alleges claims that have no basis in fact or law and his stated goals for dealing with my clients conflict with any notion of good faith negotiation.

His presence will be a distraction, and my clients do not want to be in the same building as him because he has proven himself to be hot-headed, immature and irrational. Your clients are free to continue to rely on him, but that does not mean he needs to be at the mediation. You can set up a Zoom meeting or have him available by phone. We object to his presence, and you previously agreed he would not be there. You have the choice: (1) bring him with you which will result in wasting everyone's time;(2) have him available via Zoom or phone if he ends being needed; or (3) your clients rely on just you for the mediation so we can have a productive discussion (the best option).

Second, the cost of having both of your there is not my client's concern, but it is another reason for Fischer to stay home. The mediation process should not be rushed into 2.5-hour intervals. It usually takes a mediator just over an hour to talk to each side about the case. That would leave 30 minutes for us to get into negotiations. That is not enough time. The mediation process should not be limited to such a short period. It may turn out that we can speed them up once the mediators get comfortable with each side's position, but 2.5 hours is a very limited time for a mediation. I think the most realistic thing to do is to schedule them with the idea we'll do two a day. The first one may go long but as I have mentioned to you before, if it settles, we may have a framework that settles the rest. Realistically, if the first one settles, we may be able to settle the rest without even having to stay the whole week or having anyone return.

Any effort to disregard the mediation precondition by unilaterally declaring it a failure because we don't want to comply with your timing conditions will be opposed with a motion to dismiss for your failure to comply. The Franchisor is not being unreasonable. The Franchisor wants to settle these matters out of court, but you are making irrational demands.
Frank

3

# EXHIBIT 4

**Richard Schimel**

Aug 11, 2025, 3:53 PM (18 hours ago)

to Frank, Adina

Frank:

Regardless of what I may have told you, my clients dictate the scope of my authority. They have made it clear that they want Mr. Fischer at the mediation table and are willing to pay the cost of having him there. We are not flying 1100 miles and spending 5 days of our time to waste it by lobbing insults at your client. My clients and I expect Mr. Fischer to be a ***constructive*** rather than a ***destructive*** force during mediation. So he will be attending, whether you or your client likes it or not. There is nothing in the Franchise Agreement that allows NB to dictate who represents a franchisee at mediation. And at the end of the day, it is I, not Mr. Fischer, that will control my clients' interaction during the mediation process.

As for his filing what you call a frivolous lawsuit, that has little or nothing to do with the mediation process. Dennis Yu is trying to destroy Mr. Fischer's business, ZivZo, LLC through adverse Internet publicity to eliminate him as support for my clients' mediation. Mr. Fischer believes that your client is complicit in that effort. If Mr. Yu would simply back off there would be no litigation. But his actions will never succeed in Mr. Fischer withdrawing his support for the NB franchisees that are my clients.
And speaking of disruptive forces, were you aware if the fact that Bryant Amundson filed an Attorney Complaint against ***me*** with the Attorney Grievance Commission of Maryland (attached)? I"s this your client's concept of "good faith"?

As for scheduling, I will agree to 2 mediations per day of 3.5-4 hours each. I suggest that once AAA assigns mediators, that we send some sort of Position Statement to them as to each franchisee in advance of 9/15/25 to expedite the process of negotiating.

See, I can be as rational as the next guy.

**Richard E. Schimel, Esq.**
**401 N. Washington Street**
**Suite 500**
**Rockville, Maryland 20850**
**(240) 395-4400 Office**
**(240) 463-7073 Cell**
**(240) 774-0235 Fax**

(4)

# EXHIBIT 5

**From:** Frank Reino <freino@fisherzucker.com>
**Sent:** Monday, August 11, 2025 4:06 PM
**To:** Richard Schimel <rschimel@lawofficesres.com>
**Cc:** Adina Thammavongsa AAA <AdinaThammavongsa@adr.org>
**Subject:** RE: Nautical Bowls Franchising, LLC - Case 01-25-0002-7213

First, Mr. Fischer is incapable of being anything but destructive. You will waste your time bringing him and our time by having him there. You also agreed he would not be there. If you did not have authority to do that, that is an issue between you and your clients. Your word is losing credibility with me.

Second, we still haven't even confirmed we have a mediator for these dates.
Third, Fischer has no proof my clients were involved in the Mr. Yu situation. You know that and that is why it is frivolous. The complain itself makes that obvious. This is another example of his harassment and why we don't want him there. He is not just some advisor. He has interjected himself into this matter and has a bias and an incentive.

Fourth, I will not comment on any bar complaint. As you are probably aware, those are confidential proceedings, and the bar association will determine if that complaint was frivolous or not.
Fifth, I am glad we are on the same page about the mediation logistics, but I hope it remains that way.
Thanks,
Frank

# EXHIBIT 6

**Richard Schimel**

Aug 11, 2025, 1:15 PM (18 hours ago)

to Frank, Adina

Frank:

Neither you nor your client have suffered any prejudice by virtue of my prior indication that Mr. Fischer would not be attending the mediation. Any suggestion that I somehow suckered you into the mediation process by ensuring that Mr. Fischer would not be there is just absurd. Your client's multi-page single-spaced contract requires mediation as a precondition to litigation. We are fulfilling that obligation by showing up in Minneapolis MN as per the terms of your client's contract. There's nothing that precludes me from bringing whomever I wish to assist me in the mediation process.

Just exactly what did Mr. Fischer do to you that makes you feel so strongly about his future behavior? He sent one letter to you and one letter to your client. Has he taken any steps whatsoever to force Nautical Bowls into bankruptcy? Will the lawsuit that he filed impact in any way NB's sales or its acquisition of new franchisees?

On the one hand you speak optimistically about the chances of success in mediation. But on the other hand you are trying to hinder my clients' ability to negotiate responsibly with the assistance of an experienced franchisor. You can't have it both ways, Frank. Mr. Fischer needs to be at mediation for the process to work.

So let's get this show on the road. I ask the AAA representative to please assign mediators to handle 2 mediations a day from Monday through Friday September 15-19, 2025.

**Richard E. Schimel, Esq.**
**401 N. Washington Street**
**Suite 500**
**Rockville, Maryland 20850**
**(240) 395-4400 Office**
**(240) 463-7073 Cell**
**(240) 774-0235 Fax**

# EXHIBIT 7

**From:** Frank Reino <freino@fisherzucker.com>
**Sent:** Sunday, 01 February 2026 05:12:17
**To:** Andrew Erickson <andrew.erickson22@live.com>
**Subject:** Re: New Claims

Mr. Erickson, my client no longer attempts to settle cases where Mr. Schimel is counsel. He is working with a man named Benson Fischer (who is not a lawyer, who has crossed the line and engaged in the unauthorized practice of law and who Mr. Schimel shares his fees with). Mr. Fischer solicits my client's franchisees on behalf of Mr. Schimel and I told them that my client would not negotiate with them and reward their behavior if they continued to solicit the franchisee network, which they have continued to do. The franchisees need to find different counsel if they want to settle their claims. Otherwise, we are prepared to litigate them.

I would be more than happy to negotiate with you or another attorney but we have no interest in discussing settlement if Mr. Schimel is involved.

Thanks
Frank